IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jordan Ramirez Quintana, | : | Case No. 1:25-cv-919 |
| | : | |
| Petitioner, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Robert K. Lynch, *et al*., | : | Order Granting Writ of Habeas Corpus |
| | : | |
| Respondents. | : | |

This matter is before the Court on Petitioner Jordan Ramirez Quintana's Petition for Writ

of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  Respondents filed a Return of Writ

(Doc. 7), and Ramirez Quintana filed both a Reply (Doc. 8) and Notice of Filing Supplemental

Authority (Doc. 9).

Petitioner, a citizen of Mexico, challenges his detention at the Butler County Jail in he

custody of Immigration and Customs Enforcement ("ICE") on the basis that he is being

unlawfully held and denied a constitutionally adequate custody redetermination, or a bond

hearing, under misapplication of 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a).[1]  The overwhelming

majority of federal courts have rejected Respondents' position that § 1225(b)(2)(A) applies to

Petitioner, and this Court agrees with the majority.  For the reasons that follow, the Court holds

that Ramirez Quintana's detention is unlawful and his continued detention violates his due

---

[1]  The Court was informed on March 16, 2026 that Petitioner was transferred to a detention
facility in Baldwin, Michigan in violation of this Court's December 15, 2025 Order that
"Respondents shall neither remove Ramirez Quintana from this District nor allow him to be
removed from this District unless or until the Court orders otherwise."  (Doc. 2 at PageID 26.)
Petitioner's transfer, however, does not remove this Court's jurisdiction over his habeas petition.
*See White v. Lamanna*, 42 F. App'x 670, 671 (6th Cir. 2002) ("A district court's jurisdiction
generally is not defeated when a prisoner who has filed a § 2241 petition while present in the
district is involuntarily removed from the district while the case is pending.")

process rights.

## I.  BACKGROUND

### A.  Factual Background

Ramirez Quintana is a citizen of Mexico who has been residing in the United States since approximately 2000.  (Doc. 1 at PageID 6).  He is married and has two children who are United States citizens.  (*Id*. at PageID 11.)  He has maintained employment, mainly as a restaurant worker, for the entirety of his time in the United States and is the primary source of income for his household.  (*Id*.)  He has no criminal history or record of immigration violations.  (*Id*.)

On November 3, 2025, Ramirez Quintana was taken into Department of Homeland Security ("DHS)/ICE custody and transferred to the Butler County Jail in Hamilton, Ohio.  (*Id*. at PageID 6.)  After he was arrested, ICE did not set a bond, and Ramirez Quintana requested review of his custody by an Immigration Judge ("IJ").  (*Id*.)

On November 3, 2025, DHS issued a Notice to Appear ("Notice") to Ramirez Quintana, which formally commences proceedings to determine whether a non-citizen should be removed from the United States.  (Doc. 1-3, at PageID 21).  The Notice alleges that Ramirez Quintana is "an alien present in the United States who has not been admitted or paroled."  (*Id*.)  In the Notice, DHS alleged:

1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO;
3. You entered the United States at or near unknown place, on or about unknown date;
4. You were not then admitted or paroled after inspection by an Immigration Officer.

(*Id*.)

The Immigration Judge ("IJ") issued an Order on December 10, 2025 stating that

2

Ramierz Quintana requested a custody redetermination pursuant to 8 C.F.R. § 1236, and after consideration of the evidence, the request was denied.  (Doc. 1-2 at PageID 18–19.)  The IJ's denial was based on the Board of Immigration Appeals's ("BIA's") precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which stripped immigration courts of jurisdiction over bond hearings for non-citizens detained under section 235(b) of the Immigration and Nationality Act ("INA").  (*Id.*)  The IJ found that *Hurtado* is "in effect" and the BIA, therefore, lacked jurisdiction over bond proceedings.  (*Id.* at PageID 19.)  The IJ also ruled that, if it were found that the immigration court had jurisdiction, the IJ would have set bond at $35,000.  (*Id.*)

On December 9, 2025, Ramirez Quintana was additionally charged with being an immigrant not in possession of a valid entry document as required by the INA.  (Doc. 7-1, at PageID 91.)  The Court was informed by the parties on March 16, 2026 that Petitioner was transferred to a detention facility in Baldwin, Michigan sometime in March 2026, which is where he is presently being held.

### B.     Procedural Posture

On December 12, 2025, Ramirez Quintana filed the instant Habeas Petition against Respondents Robert Lynch, the Director of the Detroit Field Office of ICE, in his official capacity; Kristi Noem, the Secretary of the DHS, in her official capacity; DHS; Todd Lyons, Acting Director of ICE, in his official capacity; Pamela Bondi, Attorney General of the United States, in her official capacity; Executive Office for Immigration Review ("EOIR"); and Richard Jones, Warden of the Butler County Jail, in his official capacity.[2]  (Doc. 1 at PageID 6–7.)

---

[2]  The Warden of the Bulter County Jail has not entered an appearance in this action, nor does the

3

Ramirez Quintana seeks grant of his Habeas Petition pursuant to 28 U.S.C. § 2241 and other emergency relief challenging the lawfulness of his detention by ICE, immediate release from custody, or in the alternative, a bond hearing.  (*Id*. at PageID 2–4, 5.)

Ramirez Quintana asserts four claims for relief.  In Counts 1 and 2 of the Habeas Petition, he asserts that his detention violates the INA because he is entitled to consideration for release on bond under 8 U.S.C. § 1226(a), and he requests relief pursuant to *Maldonado Bautista v. Santacruz,* No. 5:25-cv-01873-SSS-BFM, --- F.Supp.3d ---, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025), which certified a class of Bond Denial Class members.[3]  (Doc. 1 at PageID 12–13).  He asserts that the mandatory detention provision at 8 U.S.C. § 1225(b)(2)(A) does not apply to him as a noncitizen residing in the United States.  (*Id*. at PageID 13.)  He asserts in Count 3 that his detention is in violation of INA bond regulations, 8 C.F.R. §§ 236.1 and 1003.19.  (*Id*. at PageID 13–14.)  Finally, he asserts in Count 4 that his detention is in violation of his Fifth Amendment right to due process.  (*Id*. at PageID 14.)

Ramirez Quintana argues that this Court has jurisdiction over his Habeas Petition, and he should not be required to prudentially exhaust his administrative remedies prior to bringing suit. As to the merits, Ramirez Quintana's core argument is that a writ of habeas corpus for his immediate release is warranted because he was not afforded his right to an individualized bond determination to be released from detention pending any final determination of whether he is to be removed.  He contends that Respondents have abruptly erased the lines between the detention

---

record show that it has been served.  The term Respondents herein applies only to the federal Respondents.

[3] The case is currently temporarily stayed, however.  *Maldonado Bautista v. United States DHS*, No. 26-1044, Dkt 5.1, Order (9th Cir. Mar. 6, 2026).

statutes applying to noncitizens unlawfully *residing* in the United States, *i.e.*, 8 U.S.C. § 1226(a), and the detention statutes applying to noncitizens *arriving* at the border of, and *seeking admission* into, the United States, *i.e.*, 8 U.S.C. § 1225(b)(2)(A).  Ramirez Quintana maintains that his detention is governed by § 1226(a), which would entitle him to a bond hearing whereas Respondents contend it is governed by § 1225(b)(2)(A), which would render him ineligible for a bond hearing.  Additionally, Ramirez Quintana argues that he is a member of the Bond Denial Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) who is entitled to relief on the basis of the declaratory judgment in that case.

Respondents filed their Return of Writ (Doc. 7), to which Ramirez Quintana filed a Reply (Doc. 8) and Supplemental Memorandum (Doc. 9).  Respondents argue that the Habeas Petition should be dismissed on the basis of lack of jurisdiction and failure by Ramirez Quintana to exhaust available administrative remedies.  (Doc. 7 at PageID 53–62).  As to the merits, Respondents contend that Ramirez Quintana's arguments are speculative and moot because immigration-related decisions made by executive branch immigration officials sufficiently afford due process in the absence of judicial review and because Ramirez Quintana is currently in removal proceedings and not subject to a removal order.  (*Id*. at PageID 62–63.)  They argue that Ramirez Quintana is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) and therefore not eligible to be released under 8 U.S.C. § 1226(a).  To that point, they assert that the *Maldonado Bautista*-certified Bond Denial Class does not entitle Ramirez Quintana to habeas relief.  (*Id*. at PageID 63–89).

For the reasons that follow, the Court finds that Ramirez Quintana has jurisdiction to bring this action and need not exhaust his administrative remedies.  The Court also finds that

Ramirez Quintana is being detained unlawfully and in violation of his due process rights under the Fifth Amendment, entitling him to relief.

## II.    LAW AND ANALYSIS

Before the Court can address the merits of Petitioner's four claims, it must resolve Respondents' threshold arguments that the Court lacks jurisdiction to hear Ramirez Quintana's Habeas Petition and that he failed to exhaust his administrative remedies.  After addressing these issues, and finding them unpersuasive, the Court will turn to the heart of the matter: whether Petitioner's detention is governed by 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)(A) and whether he is being detained in violation of his due process rights.

### A.    Jurisdiction

Respondents argue that three statutory provisions, 8 U.S.C. § 1252(b)(9), (e)(3), and (g), deprive the Court of its broad jurisdiction under 28 U.S.C. § 2241, which grants district courts jurisdiction to issue a writ of habeas corpus "as law and justice require."  *Jones v. Hendrix*, 599 U.S. 465, 473 (2023).  The Court finds the law is well-established that it has subject matter jurisdiction in this case.

"Numerous courts, including this one, have held that federal district judges retain jurisdiction under § 2241 to review habeas claims by noncitizen detainees, either to challenge pre-removal detention as unconstitutional or to raise legal questions regarding the government's statutory authority to detain them."  *Azalyar v. Raycraft*, No. 1:25-cv-916, --- F.Supp.3d ---, 2026 WL 30741, at *2 (S.D. Ohio Jan 2, 2026).  This case is no exception to that well-established jurisdiction.  "A plain-language reading, in addition to a body of case law that grows larger by the day, leads to the conclusion that the jurisdiction-stripping provisions contained in § 1252 do

6

not serve to deprive the Court of jurisdiction to review [Petitioner's] challenge to his detention."

*Ortiz Gutierrez v. Raycraft,* No.1:26-cv-69, --- F.Supp.3d ---, 2026 WL 456065, at *2 (S.D. Ohio

Feb. 18, 2026) (citing *Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL

3628229, at *3–5 (S.D. Ohio Dec. 15, 2025)).  *See also Azalyar*, 2026 WL 30741, at *2; *Alonso-

Portillo v. Bondi,* No. 1:25-cv-306, 2025 WL 2483393, at *6 (S.D. Ohio Aug. 28, 2025)

(collecting cases).  Under these circumstances, "[j]urisdiction is well established" and "no further

review is required."  *Ortiz Gutierrez,* 2026 WL 456065, at *2 (citing *Zadvydas v. Davis*, 533

U.S. 678, 687–88 (2001); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482,

(1999)).

 The Court concludes that it has subject matter jurisdiction to entertain Ramirez

Quintana's Habeas Petition and will now turn to the issue of exhaustion.

 **B.**   **Exhaustion**

 Respondents also contend that Ramirez Quintana's Habeas Petition must be dismissed

because he failed to exhaust all available administrative remedies.  For the reasons that follow,

the Court will not exercise its discretion to require prudential exhaustion in this case.[4]

---

[4] The Court is mindful that there are diverging opinions in this district on the issue of prudential
exhaustion and agrees with the Honorable Michael R. Barrett's evaluation of the prudential
exhaustion analysis.  *See Ortiz Gutierrez*, 2026 WL 456065, at *5 n.2 (declining to apply
prudential exhaustion as a matter of discretion and because the petition presents a substantial
constitutional question and requiring exhaustion would be futile) *and Azalyar*, 2026 WL 30741,
at *6 n.5 (declining to impose prudential exhaustion as a matter of discretion and due to the
petition presenting a substantial constitutional question); *c.f. Bartolon v. Bondi*, No. 1:25-cv-747,
2025 WL 3674604, at *7–9 (S.D. Ohio Dec. 18, 2025) (McFarland, J.) (factors weigh in favor of
imposing judicially-created prudential exhaustion doctrine; dismissing habeas petition); *Cortez v.
Lynch,* No. 1:25-cv-822, 2026 WL 82039, at *4–7 (S.D. Ohio Jan. 12, 2026) (McFarland, J.)
(same); *Urrutia-Diaz*, No. 2:25-cv-03098-TLP-atc, 2025 WL 3689158, at *4 n.5 (W.D. Tenn.
Dec. 19, 2025) (finding unpersuasive line of cases out of the Northern District of Ohio requiring
administrative exhaustion of bond determinations).

Generally, a petitioner must exhaust administrative remedies before filing a habeas corpus petition pursuant to 28 U.S.C. § 2241, although the statute itself does not expressly contain such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 144–1445 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006).  *See also Salvador F.-G. v. Noem*, No. 25-cv-0243-CVE-MS, 2025 WL 1669356, at *6 (N.D. Ok. 2025).  "Where Congress specifically mandates, exhaustion is required."  *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (citing *McCarthy v. Madigan*, 503 140, 144 (1991)).  "But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court."  *Id*. (citing *McCarthy*).

There is no clear statement from Congress "that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention[,]" as in this case.  *Salvador F.-G.,* 2025 WL 1669356, at *6; *see J.C.G. v. Genalo*, No. 1:24-cv-08755 (JLR), 2025 WL 88831, at *4–6 (S.D.N.Y. 2025) (excusing exhaustion requirement as futile).  "Exhaustion requirements not written into the text of the statute are prudential" which is a "judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not."  *Lopez-Campos,* 797 F.Supp.3d 771, at 778 (E.D. Mich. Aug. 25, 2025) (citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019)).

Respondents argue that Petitioner must appeal his denial of his bond to the BIA, or exhaust his administrative remedies, prior to filing suit in federal court.  (*See* Doc. 1-2.)  They contend that courts within the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion.  *See, e.g., Lopez-Campos*, 797 F.Supp.3d at 778.  Under that test, courts may require

8

prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id*. (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

All three factors weigh against imposing prudential exhaustion here.  First, the questions presented herein—a question of statutory interpretation and due process challenges—are properly addressed by federal courts.  *See, e.g., Velasco-Sanchez,* 2025 WL 3553672, at *5 (excusing exhaustion where the issues raised in the petition are purely legal in nature and do not require the agency to develop the record); *Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *2 (W.D. Mich. Oct. 31, 2025) (statutory question did not require development of record if exhaustion were required and the BIA cannot review constitutional challenges); *Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) ("Ultimately, the issue boils down to a matter of statutory interpretation.  And matters of statutory interpretation belong historically within the province of the courts." (citations omitted)). Additionally, the Sixth Circuit has noted that due process challenges, such as those raised by Ramirez Quintana herein, do not generally require exhaustion because the BIA cannot review such constitutional challenges.  *See, e.g., Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Alternatively, even in situations where a court might normally require prudential exhaustion, the court may waive the requirement.  One reason to do so is when requiring

9

exhaustion would impose hardship, which is the case here.  Requiring exhaustion in this case would very likely subject Ramirez Quintana to unreasonable delay, as appeals to the BIA of an IJ's decision denying bond often take six months or longer to resolve.  *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at *5 ("Exhaustion is also excused when delay means hardship." (citation omitted)).  That time frame is inconsistent with the relief that Ramirez Quintana seeks: immediate release on a Habeas Petition that is ripe for review.

Finally, prudential exhaustion also is not required where it would be futile, which the Court finds is the strongest applicable facto here.  By virtue of its decision of *Matter of Yajure Hurtado*, 29 I&N 216 (BIA 2025), the BIA has already rejected the statutory argument that Ramirez Quintana presents to this Court.  *Velasco-Sanchez*, 2025 WL 3553672, at *5–6 (finding futility where the petitioner was unlikely to obtain relief sought because of the BIA's *Hurtado* decision); *see also Barco Mercado v. Francis*, No. 25-cv-6582 (LAK), --- F.Supp.3d ---, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025); *Molina Ochoa v. Noem*, No. 1:25-cv-00881-JB-LF, 2025 WL 3125846, at *10 (D. N.M. Nov. 7, 2025) (excusing exhaustion requirement under futility exception because "[t]he BIA's decision in *Yajure v. Hurtado* appears to categorically deny relief to noncitizens who, like petitioner, are apprehended after residing in the country and who seek to challenge an immigration judge's determination that they subject to mandatory detention under § 1225(b)."); *Alvarez Ortiz v. Freden*, No. 25-cv-960-LJV, 2025 WL 3085032, at *590 (W.D.N.Y. Nov. 4, 2025) (finding that exhaustion would be futile because immigration judges are bound to follow *Hurtado*); *Mejia*, 2025 WL 3041827, at *3 ("Petitioner's request [for bond from an immigration judge] would likely be denied given the BIA's recent decision in

10

*Yajure v. Hurtado.*"); *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) ("The Court finds that the statutory interpretation question at the center of this case must be resolved by a judicial decision on the merits. *** Until such a decision is reached, and BIA no longer applies a policy that likely violates federal law, the circumstances do not present a need for requiring prudential exhaustion." (citation omitted)). Respondents have not cited, and the Court is not aware of, any decision or development suggesting that the BIA is likely to reverse course on its *Hurtado* ruling.

For these reasons, the Court finds that prudential exhaustion is not required for Petitioner to bring this action.

### C. Immigration Law Governing Pre-Removal Non-Criminal Detention

Having addressed the threshold issues of jurisdiction and exhaustion, the Court turns to the primary issue in this action: whether Ramirez Quintana's detention is governed by 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)(A).  All four of Petitioner's claims touch on this legal question. Petitioner asserts in Count 1 that his detention violates his rights under 8 § U.S.C. § 1226(a) and the Court's judgment in *Maldonado Bautista,* 2025 WL 3289861.[5]  In Count 2, he asserts that Respondents violated 8 U.S.C. § 1226(a) by applying § 1225(b)(2), and in Count 3 that Respondents violated the bond determination regulations of 8 C.F.R. §§ 236.1 and 1003.19.  In Count 4, Petitioner contends denying him a bond redetermination hearing violates his right to due process under the Fifth Amendment.

For the reasons that follow, the Court is persuaded by the "overwhelming majority of

---

[5] For reasons addressed *infra*, the Court will not resolve the question of the application of *Maldonado Bautista*.

fellow jurists from well over half of the federal judicial districts in the country" who have found that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual encountered is 'seeking admission' at the border or its functional equivalents." *Ortiz Guiterrez*, 2026 WL 456065, at *3 (citing *Falcon v. Florentino,* No. 25-17164, at *2 (D. N.J. Dec. 18, 2025) and collecting cases).  Further, the deprivation of a bond determination hearing is a violation of Petitioner's right to due process.

### 1.      Statutory Text

The Court will begin with the statutory text.  On one hand, § 1226(a) states:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General--
> **(1)** may continue to detain the arrested alien; and
> **(2)** may release the alien on--
> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> **(B)** conditional parole; but
> **(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226.  Section 1225(b)(2)(A), on the other hand, states:

> **(2) Inspection of other aliens**
> **(A) In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225.  On September 5, 2025, the BIA held in *Matter of Yajure Hurtado* that

noncitizens who are present in the United States without admission and are arrested on a warrant are subject to mandatory detention under § 1225(b)(2)(A) without bond.  29 I. & N. Dec. 216 at 220, 229.

Ramirez Quintana maintains that his detention is governed by 8 U.S.C. § 1226(a), which he contends applies to noncitizens present in the United States without admission or parole. Respondents, on the other hand, assert that Ramirez Quintana's detention is governed by 8 U.S.C. § 1225(b)(2)(A), which applies to arriving applicants *seeking* admission into the country. Detention pursuant to § 1225(b)(2)(A) is mandatory; the only exceptions are parole "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A).  Thus, the parties' opposing positions present the Court with a question of statutory interpretation.

### 2.　　Statutory Interpretation

When faced with a question of statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'"  *In re Vill. Apothecary, Inc.*, 45 F. 4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)).  The Court must read each word in the statute in line with "its ordinary, contemporary, common meaning."  *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)).  If the plain text of the statute leaves ambiguity, courts turn to the canon that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *see also Corley v. U.S.*, 556 U.S. 303, 314 (2009) ("statute(s) should be construed so that effect is given to all [their] provisions[.]" (citation omitted)).

13

Section 1225, Title 8 of the United States Code, is entitled:  "Inspection by immigration officers; expedited removal of inadmissible arriving aliens, referral for hearing." 8 U.S.C. § 1225.  Section 1225(b)(2)(A) imposes mandatory detention of "applicant[s] for admission" if an immigration officer has determined that the applicant is not entitled to admission in the United States:

> **(2) Inspection of other aliens**
> **(A) In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  This statutory section defines an "applicant for admission" in § 1225(a)(1) as an alien "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).  Additionally, "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13(A).  "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Lepe v. Andrews*, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *3 (E.D. Cal. Sept. 23, 2025) (quoting *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025)).  "Other than this limited exception (which is not implicated here), detention under § 1225(b)(2) is considered mandatory." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (cleaned up); *see also Lopez-Campos*, 797 F.Supp.3d at 777.

Section 1226, on the other hand, allows for discretionary detention, as evidenced by the use of the word "may":

**(a) Arrest, detention, and release**
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General--
**(1)** may continue to detain the arrested alien; and
**(2)** may release the alien on--
**(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; [ . . .]

8 U.S.C. § 1226(a).  Subsection (c), recently amended by the Laken Riley Act, makes detention mandatory for aliens found inadmissible or deportable under certain provisions *and who have been* "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes, but it is not applicable here.  8 U.S.C. § 1226(c).  Noncitizens arrested and detained under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge." *Lopez-Campos*, 797 F.Supp.3d at 777 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  The IJ then "evaluates whether there is a risk of nonappearance or danger to the community." *Id*.

As one court recently observed:

By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts.

The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.

*Barco Mercado*, 2025 WL 3295903, at *4 (collecting cases).  As of the writing of this decision, the Sixth Circuit has yet to decide whether § 1225(b)(2)(A) or § 1226(a) governs detention under these circumstances, although district court opinions have diverged (albeit, overwhelmingly in

15

favor of the Petitioner's position).[6]  *Compare Ortiz Guiterrez*, 2026 WL 456065, at \*3–5 (joining majority of jurists to find § 1226(a) governed petitioner's detention and respondents' detaining the petitioner without bond violated his due process rights) *with Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at \*12–14 (S.D. Ohio Dec. 15, 2025) (holding § 1225(b)(2)(A) governed the petitioner's detention and dismissing habeas petition).

The Court concludes that the plain language of § 1226(a) more naturally aligns with Ramirez Quintana's detention, while the application of § 1225(b)(2)(A) to Ramirez Quintana's detention requires a strained statutory interpretation and is not persuasive.  The present-tense language used in § 1225(b)(2)(A) does not match Ramirez Quintana's status.  *See, e.g., Lopez-Campos*, 797 F.Supp.3d at 781 ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.  Noncitizens who are just 'present' in the country—those like [Petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship … — are not 'seeking' admission."); *Lopez Benitez*, 795 F.Supp.3d at 488–489 (the phrase "seeking admission" necessarily implies some sort of present-tense action) (cleaned up); *Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098-TLP-atc, 2025 WL 3689158, at \*6 (W.D. Tenn. Dec. 19, 2025) ("seeking" suggests action such that the noncitizen must actively be seeking admission and not simply residing in the country after entering unlawfully); *Del Villar v. Noem*, No. 4:25-cv-

---

[6] However, the Court is mindful that the issue is on appeal and will be argued before the Sixth Circuit on March 18, 2026 in the consolidated appeal of *Juan Lopez-Campos v. Raycraft*, No. 25-1965; *Juan Sanchez Alvarez v. Noem*, No. 25-1969; *Jose Contreras-Cervantes v. Raycraft*, No. 25-1978; *Jesus Pizarro Reyes v. Raycraft*, No. 25-1982.  In these consolidated matters, government respondents appeal the district court's orders granting petitioners' requests for writs

16

00137-GNS, 2025 WL 3231630, at *4-5 (W.D. Ky. Nov. 19, 2025) (finding that even if the petitioner might be an applicant for admission since he did not lawfully enter the country after inspection and authorization by immigration officer, the petitioner still was not "seeking" admission since he had been in the country for more than 25 years) (quoting *Lopez-Campos*, 797 F.Supp.3d at 782); *Rodrigue v. Bostock,* 802 F.Supp.3d, 1329–1330 (W.D. Wash. 2025); *Lepe*, 2025 WL 2716910, at *4  (collecting cases).

Here, Ramirez Quintana, like the petitioners in the cases above (and in exponentially more not cited here), is accurately described as someone already residing in this country, albeit without having been inspected or authorized by an immigration officer, rather than as someone actively seeking admission.  As the court in *Lopez Benitez* aptly analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater.  Rather, that person would be described as already present there.  Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.***

*Lopez Benitez*, 795 F.Supp.3d at 489.

Further, continuing to look at the plain language of the statute, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'"  *Martinez v. Hyde*, 792 F.Supp.3d 211, 214 (D. Mass. 2025).  *See also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025).  It does not appear that *any* of these findings

---

of habeas corpus under 28 U.S.C. § 2241 challenging their detention without bond.

17

were made in this case, since Ramirez Quintana was never inspected by an immigration officer. (*See* Doc. 8 at PageID 111–112).  When Ramirez Quintana was arrested and detained on November 3, 2025, the Notice tissued by DHS had the box checked charging him with being "an alien *present* in the United States who has not been admitted or paroled."  (Doc. 1-3 at PageID 21 (emphasis added)).  The other available charges, whose boxes were left unchecked, were: "You are an arriving alien;" and "You have been admitted to the United States, but are removable for the reasons stated below."  (*Id.*)  *See, e.g., Patel*, 2025 WL 2996787, at *5 ("[O]n Patel's NTA, the Government checked the box labeled 'You are an alien *present* in the United States who has not been admitted or paroled' rather than checking the box labeled '*arriving*' [alien].") (cleaned up).  It strains interpretation that the Notice form includes separate categories for "alien present in the United States who has not been admitted or paroled" *and* "you are an arriving alien" yet in this action, the Respondents represent them as categorically the same.  If, as Respondents argue, those two options are one and the same, it would be unnecessary  for them to be listed as separate and distinct categories.  As in *Patel*, the Government affirmatively decided to treat Ramirez Quintana as being detained under § 1226(a) on the Notice form, and it cannot now be heard to change its position to claim that he is detained under § 1225(b)(2)(A).  *See id*.

Under the first rule of statutory interpretation—to give plain, ordinary meaning to each word in the statute(s) at issue—this court views this as a simple and straightforward conclusion. The plain language of the statute dictates that Ramirez Quintana's detention is governed by § 1226(a), not § 1225(b)(2)(A).[7]

---

[7] The Court need not delve into alternate argument raised by the parties, as it found that the statutory language is not ambiguous, which ends its analysis.  Thus, it will not address the canon of requiring avoidance of superfluousness; titles; or legislative history.  The Court also notes that

For the foregoing reasons, the Court finds that Ramirez Quintana is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a).[8] Having determined as such, the Court turns now to the issue of whether detaining Ramirez Quinana under 8 U.S.C. § 1225(b)(2)(A) deprived him of his due process rights under the Fifth Amendment.

### D.    Due Process

---

Respondents' argument that *Jennings v. Rodriguez*, 583 U.S. 281 (2018), supports its position strains credulity and relies upon the opinions of many courts who have rejected Respondents' interpretation of that case. *See, e.g., Lopez-Campos*, 797 F.Supp.3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'" (quoting *Jennings*, 583 U.S. at 288)); *Sanchez Alvarez*, 2025 WL 2942648, at *6 ("*Jennings* noted that § 1225 is part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' *** Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal.") (quoting *Jennings*, 583 U.S. at 287); *Patel*, 2025 WL 2996787, at *6 ("In particular, the Court held that Section 1225(b) 'applies primarily to [foreign nationals] seeking entry into the United States," … "whereas Section 1226 'applies to [foreign nationals] already present in the United States[.]") (quoting *Jennings*, 583 U.S. at 285, 297, 303)); *Rodriguez*, 802 F.Supp.3d at 1330–1331; *Pizzaro Reyes*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall…. § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'" (quoting *Jennings*, 583 U.S. at 288, 301)).

[8]    The Court is mindful that another Judge in this district recently reached a different result on the question of statutory interpretation. *See, e.g., Coronado*, 2025 WL 3628229 (Cole, J.); *Masis Lucero v. Field Office Dir. of Enforcement and Rem. Ops.*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025) (Cole, J.); *Jose Marcos Villa Gomez v. Field Off. Dir. of Enforcement and Rem. Ops.*, No. 1:25-cv-810, Doc. 18 (S.D. Ohio Dec. 29, 2025) (Cole, J.); *Phurtskhvanidze v. Field Office Dir. of Enforcement and Rem. Ops.*, No. 1:25-cv-827, 2026 WL 160833 (S.D. Ohio Jan. 21, 2026) (Cole, J.) . The Court has reviewed these decisions and respectfully disagrees. Similarly, the Court is neither bound nor persuaded by a recent decision by the Court of Appeals for the Fifth Circuit reaching a different result. *See Buenrostro-Mendez v. Bondi*, 166 F. 4th 494 (5th Cir. 2026).

This Court is persuaded, for the reasons discussed *infra*, that detaining Petitioner under §

1225(b)(2)(A) deprived—and continues to deprive—him of his right to due process under the

Fifth Amendment.  As the court in *Ortiz Gutierrez* stated:

> "[n]on-punitive detention in the immigration context violates the Due Process
> Clause," *Padilla v. United States Immigr. & Customs Enf't*, 704 F.Supp.3d 1163,
> 1172 (W.D. Wash. 2023), absent "adequate procedural protections" or "a special
> justification" outweighing a petitioner's liberty interest, *Zadvydas*, 533 U.S. at
> 690, 121 S.Ct. 2491; *see Ariza v. Noem*, No. 4:25-CV-165, 2025 WL 3722014, at
> *10, 2025 U.S. Dist. LEXIS 265012, at *28 (W.D. Ky. Dec. 23, 2025) (noting
> that "[t]he Due Process Clause extends to all persons regardless of status,"
> including noncitizens). "Freedom from imprisonment—from government custody,
> detention, or other forms of physical restraint—lies at the heart of the liberty that
> Clause protects." *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491.

*Ortiz Gutierrez*, 2026 WL 456065, at *4.   The Court, too, finds that detaining Petitioner under §

1225(b)(2), rather than § 1226(a), violated his right to due process.  The Court, therefore, turns to

the matter of what process is due to Ramirez Quintana.

Respondents argue that Petitioner received required due process, as he was given a bond

hearing on December 10, 2025 and was able to appeal that denial by January 9, 2026.  (Doc. 1-

2.)  But the IJ who heard Ramirez-Quintana's case denied bond on the basis of *Hurtado* and

ruled that, if the immigration court had jurisdiction, bond would have been set at $35,000.  (*Id.*)

In the Sixth Circuit, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424

U.S. 319 (1976), to determine the adequacy of the process in the context of civil immigration

detention.  *See, e.g., United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Wali

v. Raycraft*, No. 1:26-cv-145, 2026 WL 496707, at *2 (S.D. Ohio Feb. 23, 2026); *Ortiz

Gutierrez,* 2026 WL 456065, at *4–5; *Azalyar*, 2026 WL 30741, at *4–5.  *Mathews* instructs the

Court to consider three factors: (1) the private interest that will be affected by the official action;

(2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including

20

the fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews*, 424 U.S. at 335.  Two of the three factors favor Ramirez Quintana.

The first *Matthews* factor, the private interest that will be affected by the official action, strongly favors Ramirez Quintana.  As noted above, at the heart of the Fifth Amendment is the right to be free from deprivation of liberty, and his liberty is at stake.  Ramirez Quintana has a significant private interest in avoiding detention, and especially detention indistinguishable from criminal incarceration.  According to the Petition, Ramirez Quintana is married and has two children who are United States citizens.  He is the main source of income for his family and has maintained employment, primarily as a restaurant worker, throughout his time in the United States.  He has no criminal history and no record of immigration violations.  His detention without a bond hearing impinges on his liberty.

The second factor also favors Ramirez Quintana.  An individualized bond redetermination hearing provides a mechanism for an IJ to determine whether Ramirez Quintana poses a flight risk or danger to the community, thereby reducing the risk of erroneous deprivation of his right not to be deprived of liberty without due process.  *See, e.g., Lopez-Campos*, 797 F.Supp.3d at 785.

Finally, the last factor is neutral and does not favor either side.  The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harms to the community, but nothing in the record before this Court suggests that detention of Ramirez Quintana is necessary to further the Government's interest.  Nor has the Government demonstrated that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.

In sum, two of the three *Mathews* factors favor Ramirez Quintana and compel this Court to hold that his current, continued detention under § 1225(b)(2)(A) violates his Fifth Amendment right to due process. *See Urrutia-Diaz*, 2025 WL 3689158, at *7–8 (all three *Mathews* factors weigh in petitioner's favor); *Del Villar*, 2025 WL 3231630, at *6–7 (all three factors favor the petitioner); *Barco Mercado*, 2025 WL 3295903, at *11–12 (addressing due process claim); *see also Lopez Benitez*, 795 F.Supp.3d at 491–96 (discussing due process and *Mathews v. Eldridge*); *Lopez-Campos*, 797 F.Supp.3d at 784–85 (applying *Mathews*); *Chavez*, 2025 WL 3187080, at *8 (summary conclusion of due process violation and collecting cases).

Ramirez Quintana's constitutional and statutory claims challenging the denial of bond are **GRANTED**. *See, e.g., Lopez-Campos*, 797 F.Supp.3d at 785 (discussing violations of due process clause and the INA in granting relief).[9]

---

9       In Claim 1, Petitioner also asserts that he is entitled to habeas relief in the form of immediate release because he is a member of the Bond Denial Class certified in *Maldonado Bautista v. Santacruz*, No, 5:25-cv-01873-SSS-BFM (C.D. Cal.). "The declaratory judgment," Ramirez Quintana explains, "held that the Bond Denial Class members are detained under 8 U.S.C. § 1226(a), and thus may not be denied consideration for release on bond under § 1225(b)(2)(A)." (Doc. 1 at PageID 3 (citation omitted)). Ramirez Quintana insists that Respondents are bound by the judgment in *Maldonado Bautista*. (*Id*. at PageID 4). In a Notice of Supplemental Authority, Ramirez Quintana adds that the district court in *Maldonado Bautista* issued a decision on February 18, 2026, vacating the BIA's *Hurtado* decision upon which Immigration Courts have relied in declining jurisdiction over bond hearings. (Doc. 9.) On March 6, 2026, however, the Ninth Circuit stayed the district court's February 18, 2026 order granting petitioners' motion to enforce the judgment and vacating *Hurtado*. No. 26-1044, Dkt 5.1, Order (9th Cir. Mar. 6, 2026).

Regardless of the stay, however, because the Court finds that Ramirez Quintana's other arguments are meritorious, the Court need not decide whether or to what extent *Maldonado Bautista* would be binding. *See, e.g., Martinez Flores v. Polly Kaiser*, et al., No. 1:26-cv-00582-KES-CDB (HC), 2026 WL 482739, at *8 (E.D. Cal. Feb. 20, 2026) ("The undersigned need not resolve the issue of the enforceability of the *Maldonado Bautista* judgment here given that Petitioner is entitled to the relief he seeks in light of Respondents' violation of his statutory rights under section 1226(a)." (citation omitted)); *Rodriguez v. Woosley*, No. 4:25-cv-168-RGJ, 2026 WL 36345, at *10 (W.D. Ky. Jan. 6, 2026) ("Although noteworthy, it is still not necessary for

22

### E.     Attorneys' Fees and Costs

Ramirez Quintana seeks attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Section 2412(b) of the EAJA permits a court to award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States…." 28 U.S.C. § 2412(b). The Court will consider a motion for any attorneys' fees and costs filed in conformity with the procedures set forth in the statute and the local rules. *See, e.g., Ichich Xo v. Daley*, No. 25-176-DLB, 2025 WL 3657230, at *8 (E.D. Ky. Dec. 17, 2025); *Padilla-Ugsha v. Ladwig*, No. 2:25-cv-03045-TLP-cgc, --- F.Supp.3d ---, 2025 WL 3638007, at *8 (W.D. Tenn. Dec. 15, 2025).

## IV.     CONCLUSION

For the foregoing reasons, the Court **FINDS** that Ramirez Quintana is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a) in violation of his right to due process under the Fifth Amendment. The Court,

---

this Court to adopt the position of the Central District of California. For now, the Court 'rests its decision' on the independent merits of Rodriguez's petition without relying on *Bautista*." (citing *Santuario v. Bondi*, No. 25-4296 (JRT/JFD), 2025 WL 3469577, at *2 n.4 (D. Minn. Dec. 2, 2025)); *Velasco-Sanchez*, 2025 WL 3553672, at *3 (granting relief on merits of petition without resolving question whether *Maldonado Bautista* was binding).

With respect to February 18, 2026 decision purporting to vacate *Hurtado* nationwide, courts that have addressed that decision generally decline to resolve its effect. *See, e.g. Mendoza v. Raycraft*, No. 4:25-cv-2183, 2026 WL 507389, at *7–8 (N.D. Ohio Feb. 24, 2026) (declining to alter decision denying petition as unexhausted because *Maldonado Bautista* was not controlling law); *Ramos-Robles v. Noem*, No. 2:26-cv-00333-RFB-NJK, 2026 WL 496687, at *2 (D. Nevada Feb. 23, 2026) (finding independently of February 18, 2026, decision vacating *Hurtado* that petition was meritorious). *But see Yogesh Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *10 (W.D. Wash. Feb. 23, 2026) (noting that IJ could not invoke *Hurtado* to decline jurisdiction over bond hearing because *Maldonado Bautista* vacated *Hurtado*). The Court finds that approach appropriate in this case as well.

therefore, **ORDERS that within seven days of entry of this Order,** Respondents shall either (1) provide Ramirez Quintana with a due-process compliant, individualized bond redetermination hearing before an IJ, at which the Government shall bear the burden of persuasion justifying his continued detention; or (2) release Ramirez Quintana from custody. The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file a report informing the Court whether and when a due-process compliant, bond redetermination hearing was held or whether and when Ramirez Quintana was released from custody.

  **IT IS SO ORDERED**.

        S/Susan J. Dlott      
        Judge Susan J. Dlott
        United States District Court